**UNITED STATES DISTRICT COURT**   **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CASE NO. 4:13-CR-67(2) |
| | § | |
| RICARDO ORTIZ-FERNANDEZ | § | |

### MEMORANDUM AND ORDER

Pending before the court is Defendant Ricardo Ortiz-Fernandez's ("Ortiz-Fernandez") *Pro se* Motion for Compassionate Release (#426), wherein he requests that the court release him from imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A) due to his medical condition and the threat of Coronavirus Disease 2019 ("COVID-19").  The Government filed a response in opposition (#428).  United States Probation and Pretrial Services ("Probation") recommends denying the motion.  Having considered the motion, the Government's response, Probation's recommendation, the record, and the applicable law, the court is of the opinion that the motion should be denied.

I.   Background

On March 12, 2014, a federal grand jury in the Eastern District of Texas returned a single-count First Superseding Indictment charging Ortiz-Fernandez and 7 other individuals with Conspiracy to Possess with the Intent to Distribute Heroin, in violation of 21 U.S.C. § 846.  On May 20, 2015, a jury found Ortiz-Fernandez and 2 codefendants guilty of the charged offense. Subsequently, on September 18, 2015, the court sentenced Ortiz-Fernandez to 360 months' imprisonment, to be followed by a 10-year term of supervised release.  Ortiz-Fernandez appealed his judgment of conviction, and on May 19, 2017, the United States Court of Appeals for the Fifth Circuit affirmed his conviction and sentence.  Ortiz-Fernandez previously filed a motion for reduction of sentence on August 12, 2020, which the court denied on September 14, 2020, for

failure to exhaust his administrative remedies and/or to present extraordinary and compelling reasons to reduce his sentence of imprisonment (#425).  Ortiz-Fernandez is currently housed at Federal Correctional Institution Oakdale II ("FCI Oakdale II"), located in Oakdale, Louisiana. His projected released date is November 16, 2038.

II.   <u>Analysis</u>

On December 21, 2018, former President Trump signed the First Step Act of 2018 into law.  *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194.  The Act, in part, amended 18 U.S.C. § 3582(c), which gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment:

> (A) the court, upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction; or
> >
> > (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).  This provision is commonly referred to as "compassionate release."

A.    <u>Exhaustion of Administrative Remedies</u>

Prior to the First Step Act, only the Director of the BOP could file a motion seeking compassionate release.  *See United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020) ("Prior to the passage of the First Step Act . . . courts lacked the power to adjudicate motions for compassionate release."), *cert. denied*, 141 S. Ct. 920 (2020); *Tuozzo v. Shartle*, No. 13-4897, 2014 WL 806450, at *2 (D.N.J. Feb. 27, 2014) (denying petitioner's motion for compassionate release because no motion for his release was filed by the BOP).  The First Step Act amended § 3582(c) by providing a defendant the means to appeal the BOP's decision not to file a motion for compassionate release on the defendant's behalf.  *United States v. Cantu*, 423 F. Supp. 3d 345, 347 (S.D. Tex. 2019); *United States v. Bell*, No. 3:93-CR-302-M, 2019 WL 1531859, at *1 (N.D. Tex. Apr. 9, 2019).  The plain language of the statute, however, makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement.  18 U.S.C. § 3582(c)(1)(A); *United States v. Garrett*, 15 F.4th 335, No. 20-61083, 2021 WL 4343293, at *1 (5th Cir. Sept. 24, 2021) ("[T]o file a proper motion for compassionate release in the district court, a prisoner must first exhaust the available administrative avenues."); *Franco*, 973 F.3d at 467 (holding that the statutory requirement that a defendant file a request with the BOP before filing a motion for compassionate release in federal court "is *not* jurisdictional but that it *is* mandatory"); *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) ("Even though [the] exhaustion requirement does not implicate [the court's] subject-matter jurisdiction, it remains a mandatory condition."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he exhaustion requirement . . . presents a glaring roadblock foreclosing compassionate release.").  Thus, before

seeking relief from the court, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request.  18 U.S.C. § 3582(c)(1)(A); *Garrett*, 2021 WL 4343293, at *2 ("[A]n inmate has two routes by which he may exhaust his administrative remedies.  Both begin with 'requesting that the [BOP] bring a motion on the defendant's behalf.'" (quoting *Franco*, 973 F.3d at 467)); *United States v. Harris*, 812 F. App'x 106, 107 (3d Cir. 2020); *United States v. Springer*, 820 F. App'x 788, 791 (10th Cir. 2020) (defendant "was required to request that the BOP file a compassionate-release motion on his behalf to initiate his administrative remedies" (citing *Raia*, 954 F.3d at 595)); *Alam*, 960 F.3d at 833-34; *United States v. Soliz*, No. 2:16-190-3, 2020 WL 2500127, at *3 (S.D. Tex. May 14, 2020) ("§ 3582(c)(1)(A) does not provide this Court with the equitable authority to excuse [defendant's] failure to exhaust his administrative remedies or to waive the 30-day waiting period." (quoting *United States v. Reeves*, No. 18-00294, 2020 WL 1816496, at *2 (W.D. La. Apr. 9, 2020))).

Here, Ortiz-Fernandez submitted a request for compassionate release to the warden of Oakdale II on September 15, 2020.  On October 14, 2020, Acting Warden O. Mack denied his request, noting:  "According to the Clinical Director, you have not been diagnosed with a terminal, incurable disease with a life expectancy of eighteen months or less.  You do not suffer from a chronic or serious medical condition related to the aging process and the Bureau of Prisons (BOP) can provide conventional treatment to manage your medical needs."  Although Ortiz-Fernandez complied with the exhaustion requirement before filing his current motion, nothing in

his motion indicates that extraordinary and compelling reasons exist to release him from confinement.

B.   Criteria for Release

The Fifth Circuit has held that when a defendant moves for compassionate release, he must establish three criteria.  *United States v. Shkambi*, 993 F.3d 388, 392 (5th Cir. 2021).  First, he must meet one of two conditions listed in § 3582(c)(1)(A)—either the defendant has extraordinary and compelling reasons that warrant a reduction under 18 U.S.C. § 3582(c)(1)(A)(i) or the defendant is at least 70 years of age, has served at least 30 years in prison, and meets the additional requirements of 18 U.S.C. § 3582(c)(1)(A)(ii).  *Id.* at 391.  Second, the defendant "must show that compassionate release is consistent with the applicable policy statements from the [United States Sentencing Commission ("Commission")]."  *Id.* at 392.  Third, the defendant "must convince the district judge to exercise discretion to grant the motion after considering the § 3553(a) factors."[1]  *Id.*; *accord United States v. Keys*, 846 F. App'x 275, 276 (5th Cir. 2021); *United States v. Cooper*, 996 F.3d 283, 287 (5th Cir. 2021).

Section 3582 (c)(1)(A)(i) does not define the "extraordinary and compelling reasons" that may merit compassionate release.  Rather, Congress elected to delegate its authority to the Commission.  *See* 28 U.S.C. § 994(t) (directing the Commission to "describe what should be

---

[1] Section 3553(a) directs courts to consider:  the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable United States Sentencing Guideline ("U.S.S.G.") provisions and policy statements; any pertinent policy statement of the Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim.  18 U.S.C. § 3553(a).

considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"); *Cooper*, 996 F.3d at 287; *Shkambi*, 993 F.3d at 392. Prior to the passage of the First Step Act, the Commission issued a policy statement set forth in U.S.S.G. § 1B1.13, which, along with its commentary, describes what reasons qualify as extraordinary and compelling.[2]  However, § 1B1.13 references only motions filed by "the Director of the [BOP]"—not an individual defendant.[3]  Consequently, the Fifth Circuit has held that when a defendant files a motion for compassionate release on his own behalf, the Commission's policy statement set forth in § 1B1.13 is not applicable because that policy statement governs only motions filed by the Director of the BOP.  *See Cooper*, 996 F.3d at 287-88; *Shkambi*, 993 F.3d at 392.

Nevertheless, while recognizing that they are not binding, the court views the Commission's policy statement contained in § 1B1.13 and the commentary thereto as providing guidance regarding the types of reasons that may be deemed sufficiently "extraordinary and compelling" to warrant compassionate release.  *See United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021) ("Although not dispositive, the commentary to § 1B1.13 informs [the court's] analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit

---

[2] In Application Note 1 to § 1B1.13 of the U.S.S.G., the Commission defined "extraordinary and compelling reasons" to include the following four categories of circumstances:  (i) certain medical conditions of the defendant; (ii) the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an extraordinary and compelling reason.  U.S.S.G. § 1B1.13 cmt. n.1.

[3] U.S.S.G. § 1B1.13 was last amended on November 1, 2018.  The Commission has, to date, been unable to amend § 1B1.13 to incorporate the changes wrought by the First Step Act due to the lack of a quorum.  The Commission consists of seven voting members and, per statute, requires four members for a quorum to amend the guidelines.  28 U.S.C. §§ 991(a), 994(a).  At present, the Commission has only one voting member.

6

compassionate release."); *United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020) (upholding denial of compassionate release and recognizing that the court was guided in its analysis by the commentary to U.S.S.G. § 1B1.13).  A review of dictionary definitions also sheds light on the meaning of these terms.  The word "extraordinary" is defined as "going beyond what is usual, regular, or customary . . . exceptional to a very marked extent," whereas the word "compelling" is defined as "forceful . . . demanding attention . . . convincing." *Extraordinary*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2007); *Compelling*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2007); *see United States v. Mitchell*, No. 15-20609, 2021 WL 1827202, at *2 (E.D. Mich. May 7, 2021).  "Courts have interpreted 'extraordinary' in the context of compassionate release as 'beyond what is usual, customary, regular, or common,' and a 'compelling reason' as 'one so great that irreparable harm or injustice would result if the relief is not granted.'" *Mitchell*, 2021 WL 1827202, at *2 (quoting *United States v. Murphy*, No. 15-20411, 2020 WL 2507619, at *5 (E.D. Mich. May 15, 2020); *United States v. Sapp*, No. 14-20520, 2020 WL 515935, at *3 (E.D. Mich. Jan. 31, 2020)).

### 1.   Medical Condition

In the instant motion, Ortiz-Fernandez, age 44, contends that he is eligible for compassionate release due to his medical condition—specifically, that he suffers from chronic diabetes, high cholesterol, and the rupture of ligaments on his left knee.  In its response, the Government acknowledges these reported conditions and also points out that Ortiz-Fernandez is obese.  Although not binding on the court, § 1B1.13 suggests that extraordinary and compelling reasons exist regarding a defendant's medical condition when the defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory)" or when a

defendant is "suffering from a serious physical or medical condition," "suffering from a serious functional or cognitive impairment," or "experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A).

Here, according to Ortiz-Fernandez's Presentence Investigation Report ("PSR"), prepared on July 14, 2015, Ortiz-Fernandez described his overall physical condition as fair. He reported suffering from no serious medical conditions. He stated, however, that he had injured his knee while in custody and suffered from recurring pain due to that injury and also reported that he suffered from low back pain. Probation noted that in June 2015, Ortiz-Fernandez had x-rays performed on his left knee, but the medical personnel who reviewed the x-rays noted no problems. Nonetheless, he was prescribed Naproxen for his pain. Moreover, he was described as being 5'10" tall and weighing 230 pounds, giving him a body mass index ("BMI") of 33 and rendering him obese.[4]

Since that time, according to Ortiz-Fernandez's BOP medical records, he has been diagnosed with Type 2 diabetes and hyperlipidemia (high cholesterol). He initially refused to take medication for either condition. On April 13, 2020, he told Yolanda Starr, FNP-BC, "I remember them talking to me about the Diabetes and I know what high cholesterol will do to you, but I don't want any medicine for either." Ortiz-Fernandez subsequently began taking medication for these

---

[4] According to the Centers for Disease Control and Prevention ("CDC"), a BMI below 18.5 is underweight, a BMI between 18.5 and 24.9 is normal, a BMI between 25 and 29.9 is overweight, and a BMI of 30 or above is obese.

medical problems and is currently prescribed Glipizide and Metformin to treat his diabetes and Atorvastatin to control his hyperlipidemia.  By March 29, 2021, Ortiz-Fernandez's A1c level had improved to 7.5% from 9.4% on September 22, 2020, and 14.4% on August 6, 2020, demonstrating a lessening in the severity of his diabetes.[5]  Ortiz-Fernandez's medical records also reveal that tears in the meniscus in his knee were repaired surgically via arthroscopy in August 2016.  Notations in his BOP medical records reflect, however, that he remains obese.  Ortiz-Fernandez is classified as a BOP Medical Care Level 1 inmate.  According to the BOP's Clinical Practice Guidance, dated May 2019, Care Level 1 inmates "are less than 70 years of age and are generally healthy.  They may have limited medical needs that can be easily managed by clinician evaluations every 6-12 months."

None of Ortiz-Fernandez's medical conditions are terminal or substantially diminish his ability to provide self-care, nor do they otherwise present extraordinary and compelling reasons justifying compassionate release.  *See Thompson*, 984 F.3d at 433.  To the contrary, Ortiz-Fernandez's afflictions are well managed with medication and monitoring.  *See id.*  The court acknowledges that, according to the CDC website, two of Ortiz-Fernandez's underlying medical problems—specifically, diabetes and obesity—can make him more likely to become severely ill should he contract COVID-19 once again; nonetheless, such commonplace maladies do not make Ortiz-Fernandez's case "extraordinary."  *See id.* at 434.

---

[5] A hemoglobin A1c test is a method for measuring blood sugar.  According to the CDC, a normal A1c level is below 5.7%, a level of 5.7% to 6.4% indicates prediabetes, and a level of 6.5% or more denotes diabetes.

According to the CDC, 34.2 million people in the United States, approximately 10.5% of the population, have diabetes.  Of those, 90 to 95% have Type 2 diabetes.  Moreover, 42.5% of the adult population in the United States is obese and 73.6% is overweight.  In addition, more than 12% of the adult population of the United States (29 million) has high cholesterol.  Due to their pervasiveness, diabetes, obesity, and high cholesterol cannot be deemed "extraordinary" in order to merit compassionate release.  *See id.* (noting that neither hypertension nor high cholesterol made the defendant's case "extraordinary" because "nearly half of the adult population in the United States suffers from hypertension" and "roughly 12% of Americans suffer from high cholesterol"); *United States v. Hodgin*, No. 4:15-CR-40110-02-KES, 2021 WL 928179, at *3 (D.S.D. Mar. 11, 2021) (denying compassionate release to inmate who suffers from Type 2 diabetes, hypertension, hyperlipidemia, kidney disease, arthritis, and several other medical conditions); *United States v. Williams*, No. CR 15-83-SDD-EWD, 2021 WL 414825, at *3 (M.D. La. Feb. 5, 2021) (denying compassionate release to inmate with Type 2 diabetes and obesity because there was no evidence these conditions had diminished his ability to provide self-care within the facility); *United States v. Slone*, No. 7:12-05-KKC-4, 2021 WL 164553, at *1 (E.D. Ky. Jan. 19, 2021) (holding that inmate who suffered from heart disease (for which he had a stent), chronic obstructive pulmonary disease (COPD), high cholesterol, obesity, and depression had not established extraordinary and compelling reasons for compassionate release as his condition was not terminal and did not diminish his ability to provide self-care within the prison environment); *United States v. Grant*, No. 16-00172-01, 2021 WL 149308, at *4 (W.D. La. January 15, 2021) (noting that "while obesity is an underlying medical condition that poses increased risk of severe illness from COVID-19, courts have found that obesity—alone or even

paired with other medical conditions—does not provide adequate grounds for compassionate release"); *United States v. Cotto*, No. CV 16-36, 2020 WL 5761192, at *2 (E.D. La. Sept. 28, 2020) (recognizing the seriousness of diabetes and obesity but denying compassionate release because inmate had not shown that he was unable to take care of himself within the confines of the facility or that the BOP could not manage his medical conditions appropriately in view of medical records showing that he was being administered the necessary care); *United States v. Dressen*, No. 4:17-CR-40047-01-KES, 2020 WL 5642313, at *3 (D.S.D. Sept. 22, 2020) (denying compassionate release because the defendant did not identify "how his Type 2 diabetes prevents him from providing self-care in a correctional facility setting or how it amounts to extraordinary and compelling circumstances"); *United States v. Gordon*, No. 15-20609, 2020 WL 3971013, at *3 (E.D. Mich. July 14, 2020) (denying compassionate release to an obese defendant, reasoning that because "42.4% of American adults are obese and [an] additional 32% are overweight," obesity "is not a condition so [extraordinary] that injustice would result if the relief is not granted").

In this instance, Ortiz-Fernandez's BOP records reveal that he is housed in general population, is ambulatory, and participates in institutional programs. He is able to provide self-care in the institutional setting and is not limited in his activities of daily living. Clearly, Ortiz-Fernandez's medical condition did not hamper or prevent him from committing his offense of conviction or a prior drug-trafficking offense in Illinois; nor did it preclude him from illegally reentering the United States after he was deported to Mexico. Thus, Ortiz-Fernandez has failed to establish the existence of medical problems that would constitute extraordinary and compelling reasons to reduce his sentence.

11

2.    Rehabilitation

Ortiz-Fernandez maintains that his post-sentence rehabilitation, evidenced by the courses he has taken and his conduct in prison, establishes extraordinary and compelling reasons for compassionate release.  While the court may consider rehabilitation efforts, "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."  28 U.S.C. § 994(t); *see Shkambi*, 993 F.3d at 392; *United States v. Brooker*, 976 F.3d 228, 237-38 (2d Cir. 2020) (holding that a district court's discretion in sentencing is broad; however, there is a "statutory limit on what a court may consider to be extraordinary and compelling . . . [and] '[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.'" (quoting 28 U.S.C. § 994(t))); *United States v. Hudec,* No. CR 4:91-1-1, 2020 WL 4925675, at *5 (S.D. Tex. Aug. 19, 2020) ("While the Court is permitted to consider post-sentencing rehabilitation in determining whether to grant an eligible defendant a sentence reduction, it is not authorized to grant a reduction based upon post-sentencing rehabilitation alone."); *cf. United States v. Whitehead*, 986 F.3d 547, 551 (5th Cir. 2021) (upholding the denial of a sentence reduction from a life sentence and finding that the court may, but is not required, to consider a defendant's post-conviction rehabilitative efforts when evaluating a motion for reduction under § 404 of the First Step Act).

While Ortiz-Fernandez claims that he has maintained a good disciplinary record while incarcerated and that he is subject to deportation to Mexico upon his release from custody, ensuring that he will not pose a risk to society, the Seventh Circuit has found neither of these arguments to be extraordinary or compelling.  *See United States v. Ugbah*, 4 F.4th 595, 597 (7th Cir. 2021) (rejecting compassionate release of a Nigerian inmate reasoning that "[m]ost nonviolent

criminals maintain good disciplinary records" and that his removal to Nigeria "was known from the outset and played a role in setting the original sentence"). Moreover, in light of Ortiz-Fernandez's offense of conviction, involving his participation in an international drug-trafficking organization, the court finds that "[s]ending [the defendant] overseas will not guarantee the safety of people in this nation or any other." *Id.*

Thus, although Ortiz-Fernandez lists a variety of educational courses he has completed and appears to have incurred only one disciplinary infraction while incarcerated (a 2017 violation for having an unauthorized item), he has not presented sufficiently extraordinary and compelling accomplishments or circumstances to merit compassionate release under the facts of this case. *See United States v. Lewis*, No. 17-CR-28-FPG, 2021 WL 4519795, at \*3 (W.D.N.Y. Oct. 4, 2021) (finding defendant's efforts at rehabilitation and plans to start a new life elsewhere to be commendable and recognizing the unusual burdens he faced in prison but finding those considerations not to undermine the factors that led to his original sentence—his offense, his criminal history, and the need for deterrence); *United States v. Boyd*, No. 3:17-CR-37-TAV-DCP-4, 2021 WL 4497476, at \*4 (E.D. Tenn. Sept. 30, 2021) (the court, while recognizing defendant's efforts to improve himself, did not find his rehabilitation efforts to be so extraordinary as to outweigh the other sentencing factors); *United States v. Willsey*, No. 3:00-cr-00438-HZ, 2021 WL 4462889, at \*2 (D. Ore. Sept. 28, 2021) (although finding defendant's steps toward rehabilitation to be laudable, the court ruled that they did not present an extraordinary circumstance that would justify compassionate release, particularly given the seriousness of his offenses of conviction); *United States v. Rounds*, No. 10-CR-239S (2), 2021 WL 4437170, at \*4 (W.D.N.Y. Sept. 28, 2021) (commenting that defendant's efforts at rehabilitating himself were laudable and should be

continued, but concluding that they did not alone or in combination with his other arguments constitute an extraordinary and compelling reason for compassionate release).  Similarly, the court hopes that Ortiz-Fernandez will continue on the path to rehabilitation, but declines to exercise its discretionary authority under § 3582 at this time based on either his medical condition or his rehabilitation efforts.  *See Lewis*, 2021 WL 4519795, at *3.

　　　3.　COVID-19

Ortiz-Fernandez also expresses concerns regarding the spread of COVID-19 among the prison population.  Nevertheless, as of November 17, 2021, the figures available at www.bop.gov list 0 inmates (out of a total inmate population of 1,053) and 1 staff member at FCI Oakdale II as having confirmed positive cases of COVID-19, 275 inmates and 31 staff members who have recovered, and 2 inmates who succumbed to the disease.  Indeed, according to Ortiz-Fernandez's medical records, he tested positive for the disease on January 19, 2021,was hospitalized, received treatment, and had recovered from the virus by February 25, 2021, although he continued to experience some residual effects for which he was prescribed medication.  Thus, it appears that the facility where Ortiz-Fernandez is housed is handling the outbreak appropriately and providing adequate medical care.

Although Ortiz-Fernandez expresses legitimate concerns regarding COVID-19, he does not establish that the BOP cannot manage the outbreak within his correctional facility or that the facility is specifically unable to treat Ortiz-Fernandez, if he were to contract the virus once again and develop COVID-19 symptoms, while incarcerated.  *See Thompson*, 984 F.3d at 435 ("Fear of COVID doesn't automatically entitle a prisoner to release."); *Raia*, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison

alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Banks*, No. CR 15-0080-02, 2020 WL 6839267, at *4 (W.D. La. Nov. 20, 2020) ("This Court cannot equate the generalized fear of COVID-19 to an extraordinary and compelling reason to support compassionate release, nor will it undermine BOP's criteria to determine eligibility for sentence reductions or home confinement."); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("General concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a sentence." (quoting *United States v. Koons*, 455 F. Supp. 3d 285, 292 (W.D. La. 2020))); *United States v. Clark*, 451 F. Supp. 3d 651, 656 (M.D. La. 2020) (finding the defendant had failed to present extraordinary and compelling reasons to modify his prison sentence because he "does not meet any of the criteria set forth by the statute" and he "cites no authority for the proposition that the fear of contracting a communicable disease warrants a sentence modification").  Furthermore, contracting the virus while incarcerated, even in conjunction with preexisting health conditions, is insufficient to establish exceptional and compelling circumstances warranting compassionate release.  *See United States v. Jackson*, No. 3:16-CR-196-L-1, 2020 WL 4365633, at *2 (N.D. Tex. July 30, 2020) (finding that defendant had failed to present extraordinary and compelling reasons for compassionate release despite suffering from previous underlying health conditions and testing positive for COVID-19).

Courts have repeatedly denied COVID-19-based motions for compassionate release filed by inmates who, like Ortiz-Fernandez, have already contracted and recovered from the virus.  *See*,

*e.g.*, *United States v. Gipson*, 829 F. App'x 780, 781 (9th Cir. 2020) (affirming denial of compassionate release for a defendant with preexisting conditions who had already contracted COVID); *United States v. Marley*, No. 16-CR-374 (VEC), 2020 WL 7768406, at *2 (S.D.N.Y. Dec. 30, 2020) ("[A] defendant's successful recovery from COVID-19 weighs against granting that defendant compassionate release." (quoting *United States v. Delorbe-Luna*, No. 18-CR-384, 2020 WL 7231060, at *2 (S.D.N.Y. Dec. 7, 2020))); *United States v. Stockman*, No. H-17-116-2, 2020 WL 5269756, at *3 (S.D. Tex. Aug. 26, 2020) (noting that when an inmate is infected and recovers from COVID-19, the courts have found the risks of infection or severe symptoms or effects because of underlying conditions change and diminish); *United States v. Baker*, No. CR 16-179, 2020 WL 4584195, at *4 (E.D. La. Aug. 10, 2020) ("Courts have denied COVID-19-based motions for compassionate release filed by inmates who have already contracted the virus."); *United States v. Shrout*, No. 15-CR-438, 2020 WL 3483703, at *4 (D. Or. June 26, 2020) ("[Defendant] has already contracted COVID-19 and, crucially, the BOP has properly managed the disease.").

Moreover, the BOP is in the process of administering the COVID-19 vaccine to inmates and staff. To date, the BOP has administered approximately 248,907 doses of the vaccine. According to www.bop.gov, FCC Oakdale, where the defendant is housed, has fully inoculated 1,730 inmates and 228 staff members. Indeed, according to Ortiz-Fernandez's BOP medical records, after initially refusing inoculation in April 2021, he received the first dose of the Pfizer vaccine on August 5, 2021, and the second dose on August 25, 2021. In the Fifth Circuit and elsewhere, courts have denied early release to inmates with a variety of medical conditions who have been vaccinated for COVID-19. *See United States v. Walker*, No. 20-cr-20027, 2021 WL

2474088, at *3 (C.D. Ill. June 17, 2021) (holding that because defendant was fully vaccinated, his underlying health conditions—diabetes, heart disease, high blood pressure, asthma, and substance abuse—alone, were insufficient to establish extraordinary and compelling reasons justifying compassionate release); *United States v. Parham*, No. 1:19-CR-133-LG-RHW-1, 2021 WL 1911899, at *2 (S.D. Miss. May 12, 2021) (finding that "generalized concerns of contracting COVID-19[] are not an 'extraordinary and compelling reason'" where the defendant had received the COVID-19 vaccine); *United States v. Meyer*, No 1:14-cr-00148-01-MC, 2021 WL 1895240, at *1-2 (D. Ore. May 11, 2021) (denying compassionate release to inmate with heart disease, obesity, hyperlipidemia, and a history of smoking because he was fully vaccinated and there was a low infection rate at the facility where he was housed); *United States v. Schad*, No. CR 2:17-225-3, 2021 WL 1845548, at *4 (S.D. Tex. May 5, 2021) (denying compassionate release where the defendant had been fully vaccinated against COVID-19); *United States v. Grummer*, No. 08-CR-4402-DMS, 2021 WL 568782, at *2 (S.D. Cal. Feb. 16, 2021) (denying compassionate release and noting that "[a]lthough Defendant suffers from several chronic medical conditions, his vaccination significantly mitigates the risk that he will contract COVID-19"); *United States v. Beltran*, No. 6:16-CR-00004, 2021 WL 398491, at *3 (S.D. Tex. Feb. 1, 2021) (denying compassionate release to a high-risk inmate with myriad underlying medical conditions who received the vaccine, finding that "vaccination significantly reduces [the] risk of contracting COVID-19 or experiencing complications related to a COVID-19 infection"); *accord United States v. Nunez-Arias*, No. CR H-16-436, 2021 WL 1537323, at *3 (S.D. Tex. Apr. 19, 2021).

C.   Section 3553(a) Factors

The court further finds that compassionate release is not merited in light of the applicable factors set forth in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *United States v. Shorter*, 850 F. App'x 327, 328 (5th Cir. 2021) (finding that the court did not abuse its discretion in denying compassionate release after balancing the § 3553(a) factors); *Keys*, 846 F. App'x at 276; *Shkambi*, 993 F.3d at 392; *Thompson*, 984 F.3d at 435 n.11 (collecting cases); *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020). Ortiz-Fernandez's offense of conviction entails his participation in a conspiracy that imported multi-kilogram quantities of heroin from Mexico into the United States. Leaders of the conspiracy obtained vehicles in the United States and hired couriers to drive the vehicles to Mexico where heroin was secreted in hidden compartments. The couriers drove the drug-laden vehicles back into the United States where they delivered the heroin, primarily in Chicago, and the cash drug proceeds were loaded into the vehicles. Subsequently, the couriers transported the currency to Mexico, where the sources of supply for the heroin were located. Ortiz-Fernandez served as a leader/organizer of the conspiracy. In such capacity, he was the primary source of contact for the drug-trafficking organization in Chicago and was responsible for the activities of the conspirators in the United States. Ortiz-Fernandez obtained vehicles for use by the couriers, procured titles for the vehicles, arranged for hidden compartments to be placed in the vehicles to conceal the heroin and currency, provided the couriers with expense money, paid the couriers for their services, and maintained contact with the couriers as they traveled between Mexico and the United States. Probation determined that Ortiz-Fernandez was

responsible for the importation and distribution of 72.1 kilograms of heroin and the transportation of at least $438,038 in drug proceeds which were seized during traffic stops.

Ortiz-Fernandez was convicted in Illinois in 2004 of unlawful possession of a controlled substance (cocaine) with the intent to deliver for which he was sentenced to 16 years of confinement. He was on parole for this offense at the time of his offense of conviction. Following his deportation to Mexico on June 29, 2010, he illegally returned to the United States in 2011 where he remained until he was arrested in 2013. In *Boyd*, the defendant had a similar history of violating the conditions of prior terms or release, including committing the offense of conviction while on probation. 2021 WL 4497476, at *3. The court found that "defendant's history of violating probation calls into question his respect for the law and whether he would abide by his conditions of supervised release in this case if his motion for compassionate release were granted." *Id*. This court shares the same concerns in reference to Ortiz-Fernandez. Moreover, his PSR reflects that Ortiz-Fernandez has used a number of alias names and dates of birth to conceal his true identity and his criminal activities. In fact, he gave his date of birth as April 3, 1977, to Probation in connection with this case, but Immigration and Customs Enforcement records reflect his date of birth to be January 12, 1979.

"Compassionate release is discretionary, not mandatory, and [may] be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)." *Chambliss*, 948 F.3d at 693. Where, as here, a prisoner has engaged in "severe" criminal conduct and has a criminal history, the district court has discretion to deny compassionate release under the circumstances. *Id*. at 693-94; *accord Keys*, 846 F. App'x at 276 (finding that Defendant's argument that the court gave too much weight to his criminal history, "amount[ed] to a mere disagreement with the court's balancing of

the § 3553(a) factors, which is not a sufficient ground for reversal").  In view of the nature and circumstances of his offense of conviction, his criminal history, his use of aliases, and his illegal presence in the United States, the court cannot conclude that Ortiz-Fernandez's early release from prison would afford adequate deterrence or protect the public, as he continues to pose a danger to other persons and to the community as a whole.

In addition, granting Ortiz-Fernandez compassionate release would fail to provide just punishment for his offense and promote respect for the law.  In *Chambliss*, the Fifth Circuit upheld the denial of compassionate release due to the defendant's not yet having served a sufficient portion of his sentence.  948 F.3d at 694.  The district court determined that the defendant's terminal illness "constitut[ed] 'an extraordinary and compelling reason for a sentence reduction' and that he '[did] not present a danger upon release,'" but denied release because "releasing [the defendant] after serving only 14 years of a 30-year sentence minimizes both the impact of [the defendant's] crime and seriousness of the offense." *Id.* at 693-94.  "Moreover, the [district] court, citing the § 3553(a) factors, determined that requiring [the defendant] to serve the remainder of his sentence would 'provide just punishment for the offense' and 'afford adequate deterrence to criminal conduct.'"  *Id.*; *see Thompson*, 984 F.3d at 434-35 (observing that the courts that have granted compassionate release "largely have done so for defendants who had already served the lion's share of their sentences and presented multiple, severe, health concerns").  In the instant case, releasing Ortiz-Fernandez after he has served only approximately 35% of his 30-year sentence would similarly minimize the impact of his crime and the seriousness of his offense as well as fall short of providing just punishment and adequate deterrence to criminal conduct.

As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he behaved in the past, and his track record is a poor one." No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, 447 F. Supp. 3d 399, 403 (D. Md. 2020)). Here, Ortiz-Fernandez's track record is similarly a poor one. There is no reason to believe that Ortiz-Fernandez would not revert to engaging in drug-trafficking activities and concealing his identity to further his criminal conduct if released from prison at this time.

III.   Conclusion

In sum, Ortiz-Fernandez has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere. *See United States v. Dodge*, No. 17-323-01, 2020 WL 3668765, at *5 (W.D. La. July 6, 2020) (stressing that "the rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances"); *Koons*, 455 F. Supp. 3d at 291-92 (same). As the court observed in *Koons*, rejecting the notion that it has "carte blanche" authority to release whomever it chooses, "[t]he Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner." *Dodge*, 2020 WL 3668765, at *6; *Koons*, 455 F. Supp. 3d at 292.

Consistent with the foregoing analysis, Ortiz-Fernandez's *pro se* Motion for Compassionate Release (#426) is DENIED.

SIGNED at Beaumont, Texas, this 18th day of November, 2021.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE